IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SANDRA WELLS | ) | CASE NO. |
| 967 Hayes | ) | |
| Willoughby, Ohio 44094 | ) | JUDGE: |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT FOR DAMAGES** |
| | ) | **AND REINSTATEMENT** |
| DOLGEN MIDWEST, LLC | ) | |
| c/o Corporation Service Company | ) | **JURY DEMAND ENDORSED** |
| 50 West Broad Street, Suite 1330 | ) | **HEREIN** |
| Columbus, Ohio 43215 | ) | |
| | ) | |
| **Serve also:** | ) | |
| Dolgen Midwest, LLC | ) | |
| 7280 Lake Shore Boulevard | ) | |
| Mentor, Ohio 44060 | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff, Sandra Wells, by and through undersigned counsel, as her Complaint against

the Defendant, states and avers the following:

## PARTIES

1.  Wells is a resident of the city of Willoughby, county of Lake, state of Ohio.

2.  Dolgen Midwest, LLC (hereinafter, "Dollar General") is a foreign limited liability company

    that operates a business located at 7280 Lake Shore Boulevard, Mentor, Ohio 44060.

## JURISDICTION & VENUE

3.  This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Wells is alleging

    Federal Law Claims under the Civil Rights Act of 1964, 42 U.S.C. 2000e-2, *et seq*. and The

    Family Medical Leave Act ("FMLA"), 29 U.S.C § 2601, *et seq*.

4.  All material events alleged in this Complaint occurred in county of Lake.

5.  This Court has supplemental jurisdiction over Wells' state law claims pursuant to 28 U.S.C. § 1367 as Wells' state law claims are so closely related to his federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

6.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

7.  Within 300 days of the conduct alleged below, Wells filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 532-2019-02064 against Dollar General.

8.  On or about July 15, 2020 the EEOC issued and mailed a Notice of Right to Sue letter to Wells regarding the Charges of Discrimination brought by Wells.

9.  Wells received her Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1) - which has been attached hereto as Plaintiff's Exhibit A.

10. Wells has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

11. Wells has properly exhausted her administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

### FACTS

12. Wells is a former employee of Dollar General.

13. Wells is African American.

14. Dollar General hired Wells on March 31, 2016.

15. Dollar General initially employed Wells as a Lead Sales Associate.

16. Dollar General promoted Wells to the Assistant Store Manager on September 10, 2016.

17. Wells did not have any meaningful history of discipline during her three years of employment with Dollar General.

2

18. Wells suffers from plantar fasciitis.

19. Plantar Fasciitis is a chronic disorder of the connective tissue in feet and can cause considerable pain.

20. Wells' plantar fasciitis caused her to suffer from substantial pain.

21. Wells' plantar fasciitis was exacerbated by long periods of standing.

22. Wells often had stand for long periods of time while employed at Dollar General.

23. Wells' plantar fasciitis substantially impaired one or more of her major life functions, such as walking.

24. Wells' plantar fasciitis substantially impaired one or more of her major life functions such as working.

25. As a result of suffering from plantar fasciitis, Wells is disabled.

26. Dollar General became aware that Wells suffers from plantar fasciitis.

27. Dollar General was aware that Wells is disabled.

28. In the alternative, Dollar General perceived Wells to be disabled.

29. Despite any real or perceived disability, Wells could perform her essential functions of her position with or without reasonable accommodation(s).

30. In January 2019, Wells requested to utilize FMLA leave to care for her plantar fasciitis.

31. As of January 1, 2019, Wells had worked for at least 1,250 hours over the past twelve calendar months.

32. As of January 1, 2019, Wells was eligible to utilize FMLA leave.

33. As of January 1, 2019, Wells was entitled to utilize FMLA leave due to her plantar fasciitis.

34. When Wells requested to utilize FMLA leave, her leave was to start on January 21, 2019.

35. Dollar General informed Wells that she was eligible to utilize FMLA leave on January 14, 2019.

36. On or about January 14, 2019, Wells went shopping at a different Dollar General location (hereinafter, "Coupon Incident").

37. During the Coupon Incident, Wells attempted to use a coupon to purchase an item.

38. During all material events asserted herein, Wells was well versed in Dollar General's coupon policies.

39. During the Coupon Incident, Wells knew that the coupon she was attempting to use should have worked to receive a discount on an item.

40. Upon information and belief, an employee of Dollar General could receive discipline for not being aware of current coupon policies.

41. During the Coupon Incident, Wells provided the coupon to Autumn Last Name Unknown, the sales associate processing the order.

42. Autumn LNU is Caucasian.

43. During the Coupon Incident, Autumn LNU told Wells that the coupon could not be honored.

44. During the Coupon Incident, Wells knew that Autumn LNU was not correct that the coupon could not be honored.

45. During the Coupon Incident, initially, Autumn LNU was not aware that Wells also worked for Dollar General.

46. During the Coupon Incident, Wells disclosed to Autumn LNU that she was an Assistant Manager and was aware that the coupon should be honored.

47. During the Coupon Incident, Autumn LNU made up a lie to try to justify why the coupon could not be honored.

4

48. During the Coupon Incident, Autumn LNU cancelled Wells' transaction.

49. During the Coupon Incident, Wells advised Autumn LNU that Wells was going to be reporting Autumn LNU for not properly honoring the coupon policy.

50. During the Coupon Incident, Autumn LNU said that she would call the police on Wells for threatening Autumn LNU.

51. Wells did not threaten Autumn LNU during the Coupon Incident.

52. Immediately following the Coupon Incident, Wells advised her supervisor, Angela Gibson, about the Coupon Incident.

53. Gibson is Caucasian.

54. Wells told Gibson that the coupon should have been honored during the Coupon Incident.

55. Wells told Gibson that she believed that Autumn LNU unfairly treated Wells during the Coupon Incident due to Wells' race, African American.

56. As a supervisor, Gibson had a duty to investigate Wells' complaint of race discrimination.

57. Upon information and belief, Gibson did not investigate Wells' complaint of race discrimination.

58. Alternatively, as a supervisor, Gibson had a duty to report Wells' complaint of race discrimination.

59. Upon information and belief, Gibson did not report Wells' complaint of race discrimination.

60. Upon information and belief, Dollar General did conduct an investigation into whether Autumn LNU discriminated against Wells on the basis of her race.

61. Upon information and belief, Dollar General did not take corrective action against Autumn LNU for discriminating against Wells due to her race.

62. Dollar General ratified Autumn LNU's racial discrimination against Wells.

63. Upon information and belief, Dollar General has a policy regarding conducting investigations into potential discipline.

64. Upon information and belief, Dollar General has a policy to receive a statement from the employee it may discipline.

65. No one from Dollar General contacted Wells to receive a statement from her regarding what happened during the Coupon Incident.

66. Dollar General terminated Wells on or about January 17, 2019.

67. Dollar General asserted it terminated Wells due to her alleged conduct during the Coupon Incident.

68. Upon information and belief, Dollar General did not discipline Autumn LNU for her conduct during the Coupon Incident.

69. Upon information and belief, Dollar General did not discipline another Caucasian employee for her conduct during the Coupon Incident.

70. Dollar General terminated Wells due to her race.

71. Dollar General terminated Wells in retaliation for her complaint of race discrimination.

72. Dollar General disciplined Wells more severely than where it would discipline a Caucasian employee.

73. Dollar General terminated Wells within close proximity of when she requested to utilize FMLA leave.

74. Dollar General terminated Wells within close proximity of when she was set to utilize FMLA leave.

75. Dollar General terminated Wells in retaliation for requesting to utilize FMLA leave.

76. Dollar General terminated Wells to interfere with her ability to utilize FMLA leave.

77. Dollar General terminated Wells to keep her from being able to utilize FMLA leave as planned and requested.

78. Dollar General terminated Wells because of her disability.

79. Alternatively, Dollar General terminated Wells because of a perceived disability.

80. Upon information and belief, Dollar General has a progressive disciplinary policy.

81. Dollar General violated its own progressive disciplinary policy when it terminated Wells' employment.

82. Upon information and belief, Dollar General does not violate its own progressive disciplinary policy when terminating the employment of non-African American employees.

83. Dollar General violated its own progressive disciplinary policy when terminating Wells' employment because of her race.

84. Upon information and belief, Dollar General does not violate its own progressive disciplinary policy when terminating the employment of employees who have not made protected complaints.

85. Dollar General violated its own progressive disciplinary policy when terminating Wells' employment in retaliation for making a protected complaint.

86. Upon information and belief, Dollar General does not violate its own progressive disciplinary policy when terminating the employment of employees who have not requested to utilize FMLA leave.

87. Dollar General violated its own progressive disciplinary policy when terminating Wells' employment because she requested to utilize FMLA leave.

88. Upon information and belief, Dollar General does not violate its own progressive disciplinary policy when terminating the employment of non-disabled employees.

89. Dollar General violated its own progressive disciplinary policy when terminating Wells' employment because of her disability.

90. Upon information and belief, Dollar General does not violate its own progressive disciplinary policy when terminating the employment of employees it does not perceive to be disabled.

91. Dollar General violated its own progressive disciplinary policy when terminating Wells' employment because of a perceived disability.

## **COUNT I: RACE DISCRIMINATION IN VIOLATION OF 42 U.S.C. 2000e-2, *et seq*.**

92. Wells restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

93. Throughout her employment, Wells was fully competent to perform her essential job duties.

94. Defendant treated Wells differently than other similarly situated employees based on her race.

95. Defendant violated 42 U.S.C. 2000e-2, *et seq*. by discriminating against Wells due to her race.

96. Defendant terminated Wells without just cause.

97. At all times material herein, similarly situated non-African-American employees were not terminated without just cause.

98. Defendant terminated Wells based on her race.

99. Defendant terminated Wells based on conduct where it would not have terminated the employment of a non-African American.

100. Defendant violated 42 U.S.C. 2000e-2, *et seq*. whenit terminated Wells based on her race.

101. Wells suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages.

102. As a direct and proximate result of Defendant's conduct, Wells has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

### COUNT II: RACE DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 *et seq.*

103. Wells restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

104. Throughout her employment, Wells was fully competent to perform her essential job duties.

105. Defendant treated Wells differently than other similarly situated employees based on her race.

106. Defendant violated R.C. § 4112.01, *et seq.* by discriminating against Wells due to her race.

107. Defendant terminated Wells without just cause.

108. At all times material herein, similarly situated non-African-American employees were not terminated without just cause.

109. Defendant terminated Wells based on her race.

110. Defendant terminated Wells based on conduct where it would not have terminated the employment of a non-African American.

111. Defendant violated R.C. § 4112.01, *et seq.* whenit terminated Wells based on her race.

112. Wells suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages.

113. As a direct and proximate result of Defendant's conduct, Wells has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT III: RETALIATION IN VIOLATION OF 42 U.S.C. § 2000e-2 *et seq.*

114. Wells restates each and every prior paragraph of this complaint, as if it were fully restated herein.

115. As a result of the Defendant's discriminatory conduct described above, Wells complained about the race discrimination she was experiencing.

116. Subsequent to Wells' reporting of race discrimination to her supervisor, Defendant failed to conduct an investigation regarding her complaint.

117. Subsequent to Wells' reporting of race discrimination to her supervisor, Defendant failed to take corrective action regarding her complaint.

118. Subsequent to Wells' reporting of race discrimination to her supervisor, Defendant ratified the race discrimination Wells suffered.

119. Subsequent to Wells' reporting of race discrimination to her supervisor, Defendant treated Wells less favorably than similarly-situated employees.

120. Subsequent to Wells' reporting of race discrimination to her supervisor, Defendant terminated Wells' employment.

121. Defendant's actions were retaliatory in nature based on Wells' opposition to the unlawful discriminatory conduct.

122. Pursuant to 42 U.S.C. § 2000e-2 *et seq.*, it is an unlawful discriminatory practice to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice.

123. Wells suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages.

124. As a direct and proximate result of Defendant's retaliatory discrimination against and termination of Wells, she suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT IV:  RETALIATION IN VIOLATION OF R.C. § 4112.02(I).

125. Wells restates each and every prior paragraph of this complaint, as if it were fully restated herein.

126. As a result of the Defendant's discriminatory conduct described above, Wells complained about the race discrimination she was experiencing.

127. Subsequent to Wells' reporting of race discrimination to her supervisor, Defendant failed to conduct an investigation regarding her complaint.

128. Subsequent to Wells' reporting of race discrimination to her supervisor, Defendant failed to take corrective action regarding her complaint.

129. Subsequent to Wells' reporting of race discrimination to her supervisor, Defendant ratified the race discrimination Wells suffered.

130. Subsequent to Wells' reporting of race discrimination to her supervisor, Defendant treated Wells less favorably than similarly-situated employees.

131. Subsequent to Wells' reporting of race discrimination to her supervisor, Defendant terminated Wells' employment.

132. Defendant's actions were retaliatory in nature based on Wells' opposition to the unlawful discriminatory conduct.

133. Pursuant to R.C. § 4112.02(I) it is an unlawful discriminatory practice to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice.

134. Wells suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages.

135. As a direct and proximate result of Defendant's retaliatory discrimination against and termination of Wells, she suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT V: UNLAWFUL INTERFERENCE WITH FMLA RIGHTS

136. Wells restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

137. Pursuant to 29 U.S.C. § 2601 *et seq.*, covered employers are required to provide employees job-protected unpaid leave for qualified medical and family situations.

138. Defendant is a covered employer under the FMLA.

139. During her employment, Wells qualified for FMLA leave.

140. During her employment, Wells was entitled to FMLA leave as a result of her serious medical condition.

141. During her employment, Wells applied for FMLA leave.

142. Defendant terminated Wells shortly before she was set to utilize FMLA leave.

143. Defendant violated section 825.300(c)(1) of the FMLA and interfered with Wells' FMLA rights when Defendant terminated her employment shortly before she was set to use FMLA leave.

144. As a direct and proximate result of Defendant's conduct, Wells  is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs and reasonable attorneys' fees.

## COUNT VI: RETALIATION IN VIOLATION OF THE FMLA

145. Wells restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

146. During her employment, Wells requested to utilize FMLA leave.

147. During her employment, Wells applied for FMLA leave.

148. Shortly after applying to utilize FMLA leave, Defendant terminated Wells' employment.

149. Defendant retaliated against Wells by terminating her employment.

150. Defendant willfully retaliated against Wells in violation of U.S.C. § 2615(a).

151. As a direct and proximate result of Defendant's wrongful conduct, Wells is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorneys' fees.

## COUNT VII: DISABILITY DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 *et seq.*

152. Wells restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

153. Wells suffers from plantar fasciitis.

154. Wells' plantar fasciitis causes her severe pain.

155. As a result of suffering from plantar fasciitis, Wells is disabled.

156. In the alternative, Defendant perceived Wells as being disabled.

157. Wells' condition constituted a physical impairment.

158. Wells' condition substantially impaired one or more of her major life activities including working.

159. Wells' condition substantially impaired one or more of her major life activities including walking.

160. Defendant treated Wells differently than other similarly-situated employees based on her disabling condition.

161. Alternatively, Defendant treated Wells differently than other similarly-situated employees based on her perceived disabling condition.

162. Defendant terminated Wells without just cause.

163. Defendant terminated Wells' employment based on her disability.

164. Alternatively, Defendant terminated Wells' employment based on her perceived disability.

165. Defendant violated R.C. § 4112.01 *et seq.* when it discharged Wells based on her disability.

166. Alternatively, Defendant violated R.C. § 4112.01 *et seq.* when it discharged Wells based on her perceived disability.

167. Defendant violated R.C. § 4112.01 *et seq.* by discriminating against Wells based on her disabling condition.

168. Alternatively, Defendant violated R.C. § 4112.01 *et seq.* by discriminating against Wells based on her perceived disabling condition.

169. Wells suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq.*

170. As a direct and proximate result of Defendant's conduct, Wells suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## **DEMAND FOR RELIEF**

WHEREFORE, Wells demands from Defendants the following:

(a) Issue an order requiring Defendant to restore Wells to one of the positions to which she was entitled by virtue of her application and qualifications, and expunge her personnel file of all negative documentation;

(b) An award against Defendant of compensatory and monetary damages to compensate Wells for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $ 25,000 per claim to be proven at trial;

(c) An award of punitive damages against Defendant in an amount in excess of $ 25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for Wells' claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

/s/*Daniel S. Dubow*
Brian D. Spitz (0068816)
Daniel S. Dubow (0095530)
**THE SPITZ LAW FIRM, LLC**
25200 Chagrin Boulevard, Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax:   (216) 291-5744
Email:  brian.spitz@spitzlawfirm.com
        daniel.dubow@spitzlawfirm.com

*Attorneys for Plaintiff*

## JURY DEMAND

Plaintiff Sandra Wells demands a trial by jury by the maximum number of jurors permitted.

/s/*Daniel S. Dubow*
Brian D. Spitz (0068816)
Daniel S. Dubow (0095530)
**THE SPITZ LAW FIRM, LLC**

16